THE ILLINOIS RIVER RAILROAD COMPANY, Plaintiff in Error, *v.* BEERS & SIMS, Defendants in Error.

### ERROR TO CASS.

A subscriber to the capital stock of a railroad company, who agrees to be subject to the rules and regulations which may from time to time be adopted by the directors, cannot avoid payment, because the charter has been amended, reducing the number of days of notice to be given, if the amendment of the charter has been accepted.

Amendments to charters may be accepted in divers ways.

THIS was an action for subscription to the capital stock of plaintiff's corporation, on the part of the defendants, as partners.

13

The third count of the declaration was a general count upon the subscription, alleging that the defendants, on the first day of January, 1860, were indebted to the plaintiff in the sum of $500 for moneys due and owing on account of five shares of stock held by them in said corporation, and by virtue of divers calls made thereon before that time.

The general issue was pleaded, with leave to give in evidence special matter.

Upon the trial, the plaintiff gave in evidence, without objection, (trial being by the court), an act to construct a railroad from Jacksonville, in Morgan county, to LaSalle, in LaSalle county, Illinois; approved ——— 1st, 1854. (Acts of 1853, p. 53—Private Acts.)

Also, an act to amend the charter of the Illinois River Railroad Company, approved January 29th, 1857. (Acts of 1857, p. 105—Private Acts.)

Also, a further amendatory act, approved February 16, 1857. (Page 859—Private Acts.)

Also, a further amendatory act, approved February 14th, 1859. (Acts of 1859, p. 459—Private Acts.)

Plaintiff then called a witness who swore he was secretary of the company, and he produced the book of record of the company, containing its proceedings, showing the regular organization of the company by various entries therein.

Plaintiff next read in evidence the subscription of the defendants as follows :

"The undersigned, citizens of Cass county, Illinois, respectively subscribe to the capital stock of the Illinois River Railroad Company, to the amount of the number of shares opposite to our names, each share being one hundred dollars, our said subscriptions being subject to the rules and regulations which may from time to time be made by the corporation or directors of said company, but upon condition that each subscriber may, at his own option, be released herefrom, if Virginia should, by a change of the charter, cease to be a point on the road.

| NAMES OF SUBSCRIBERS. | NO. SHARES. | AMOUNT $ | PAID BY NOTE." |
|---|---|---|---|
| Beers & Sims. | 5 | 500 | $50 |

Plaintiff next read in evidence from the record book, an order adopted by the board of directors, 10th August, 1857.

Order recites that the board, having heretofore made calls upon the subscribers for the payment of a portion of their stock, according to which calls thirty per cent. of the amount subscribed by each subscriber is now due, including what has been paid ; and whereas, part of said subscribers have not, as yet, paid the full amount thus due; and whereas, the work

upon the road has been commenced, and the money is needed to pay for such work; and whereas, five per cent. more of said subscription has been called for by this board, which will become due on the first Monday of next September, and also five per cent. on each of the first Mondays of next October, November and December, it is therefore ordered, that each and all of the subscribers pay to the treasurer of said company, or to his agents, at such places as he may designate, on or before the first Monday of next September, thirty-five per cent., that is, the sum of thirty-five dollars, including what has been paid upon each share of one hundred dollars subscribed, and that they also pay to said treasurer, or his agents aforesaid, on each of the first Mondays of October, November and December, five dollars per share, and in default, etc., that the treasurer sue for the same; and it was further ordered, that notice of these calls be given by publication in the Cass County Times and Mason County Herald.

A further order of the board of directors, passed 10th day of November, 1857, was read in evidence, requiring the subscribers, (except those in Tazewell county), to pay on their subscriptions on the first Monday in January, 1858, five dollars per share; and also five dollars per share on the first Monday of each month thereafter, until the whole amount of stock subscribed should be paid in. The subscribers in Morgan and Cass counties to pay their calls to Thomas Plartee, collector for said company, or his agents, at such places as he should fix upon, and that twenty days' notice should be given by the treasurer, by publication in some newspaper published in Cass and Morgan counties, of the time and place where such payments were to be made.

Also, a further order, passed on the 5th day of January, 1858, by said board of directors, reciting the failure of many of the subscribers to pay the calls that had been made upon their stock, and requiring that the subscribers, (except those in Tazewell county), should pay ten dollars per share on their subscriptions on the first Monday of February next, and ten dollars per share on the first Monday of every subsequent month, until the whole amount respectively subscribed shall be paid in, said payments to be made by the stockholders in Mason county to the treasurer of the company, or his agents, and by the stockholders residing in Morgan and Cass counties, to Thomas Plartee, collector for the company, or his agents, and that twenty days' notice of the time and place of making such payments should be given by personal notice upon the subscribers, or by publication in a newspaper published in the county where the stockholders should reside, and that in

default of payment, suit should be brought, etc. In this order it was further provided, that this call should not invalidate any former call, so as to prevent suit being prosecuted upon such previous calls, " it being the intention of this order to allow suit to be prosecuted either upon any previous call, or upon this call."

The plaintiff next gave in evidence publication of the notices required to be given under each of the foregoing orders for calls to the subscribers in Cass county. The notices set forth the orders respectively for such calls, and accompanying each is an additional notice from the collector designated, and fixing time and place for payment, in pursuance of the calls, and designating agents to whom calls might be paid.

The due publication of these notices in the " Cass County Times," a newspaper published in Cass county, Illinois, was proved. The residence of the defendants in Cass county, Illinois, was also proved. It was further proved, that said defendants voted as stockholders on the 5th of September, 1857, at an election for directors, representing five shares of stock. The location of the road making Virginia a point, was also proved.

This was all the evidence; and the court upon the evidence rendered judgment for the defendants, on the ground, that there was no proof that ninety days' notice of the calls had been given to the defendants, and that the amendatory act of 1857, changing notice of calls to subscribers to twenty days, was unconstitutional; to which plaintiff excepted, and moved for a new trial, which was overruled, and excepted to by plaintiff.

Plaintiff brings the case to this court, and assigns for error, that the court erred in not rendering judgment for plaintiff upon the evidence, and erred in rendering judgment for defendants, and in overruling motion for a new trial.

HAY & CULLOM, for Plaintiff in Error.

BREESE, J. The defendants, by their subscription to the capital stock of the Illinois River Railroad Company, expressly agreed " to be subject to the rules and regulations which might, from time to time, be made by the corporation or directors of the company. By the original charter of the company, granted Feb. 11, 1853—(Session Laws 1853, page 53)—ninety days' notice of calls on stock subscriptions was required. (Sec. 14.)

This charter was amended by the act of January 29, 1857 —(Session Laws, page 105)—the twelfth section of which

provides that twenty days' notice shall be sufficient for such calls, instead of the time required in the original charter, (page 107.) It does not appear when the defendants became subscribers to the stock, nor is it material, the only question being as to the right of the legislature to pass the amendments of 1857, and whether these amendments were adopted by the company and so became a part of its charter. That the legislature can amend a charter, on the application of the company, there can be no doubt. That the amendments of 1857 were accepted by the company, is very clear. As was said in the case of the same plaintiffs against Zimmer, 20 Ill. 661, there are various modes by which amendments to charters may be accepted by corporations, or rather, by which such acceptance may be established, either for or against the corporation. The first, and perhaps the most satisfactory, is when an amendment is asked for in a general meeting of the shareholders, or when an amendment, after it is passed, is accepted by a majority in interest at such a meeting. But this is not the only or the most usual mode in this country of accepting amendments to corporate charters. This is generally done by the board of directors, who are for the most part vested with all the corporate powers of the company.

The evidence in this case sufficiently shows, that the board of directors, in making these calls, was acting under this amended charter, and is evidence of acceptance. Being so, it was binding on the defendants, by the express terms of their subscription, they knowing that the company might obtain an amendment to their charter shortening the time.

We see no difference in principle, between this case and that of Zimmer above cited. The court should have found the issue for the plaintiff, for the amount of the calls as proved.

The judgment must be reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

*Judgment reversed.*